UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
VANGUARD DEALER SERVICES, LLC :   Civ. No. 3:21CV00659(SALM)
                              :
v.                            :
                              :
BOTTOM LINE DRIVEN, LLC       :   April 27, 2022
JOSEPH DIRAFFAELE, and        :
CREDITGUARD CORPORATION       :
                              :
------------------------------x
```

**RULING ON MOTION TO AMEND COMPLAINT [Doc. #87]**

Plaintiff Vanguard Dealer Services, LLC ("Vanguard" or "plaintiff") has filed a motion to amend its complaint to "(1) address the Court's decision granting defendant CreditGuard Corporation's motion to dismiss" and (2) "adjust several allegations" to ensure that they are "consistent with discovery." Doc. #87 at 1. Defendant CreditGuard Corporation ("CreditGuard") has filed a memorandum in opposition, see Doc. #88; Doc. #90, to which plaintiff has filed a reply. See Doc. #94. For the reasons stated herein, plaintiff's motion to amend [**Doc. #87**] is **GRANTED**.

I. **Background**

Familiarity with the allegations in this case, as recited in the Court's Ruling on CreditGuard's Motion to Dismiss, see Doc. #77, is assumed. Only those allegations necessary to the resolution of this Motion will be recited here.

Plaintiff brought this action on May 12, 2021, alleging that Bottom Line Driven, LLC ("Bottom Line"); Joseph DiRaffaele; and CreditGuard conspired to divert plaintiff's customers to CreditGuard while Bottom Line and DiRaffaele served as plaintiff's agents. See generally Doc. #1.

Plaintiff's original Complaint set forth three claims against CreditGuard. Count One asserted a claim for "Breach of the Duty of Loyalty[,]" alleging that "CreditGuard is jointly and severally liable to Vanguard for any damages resulting from DiRaffaele's breach[]" of that duty. Id. at 8. Count Two alleged that CreditGuard is liable for tortious interference on the grounds that it "intentionally and tortiously interfered with the relationships Vanguard had with its customers." Id. at 9. Count Three asserted that CreditGuard engaged in "deceptive, unscrupulous, immoral, oppressive and unethical[]" actions in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Id. at 10.

CreditGuard moved to dismiss all claims against it on July 8, 2021. See Doc. #19.

This matter was transferred to the undersigned on October 25, 2021. See Doc. #42.

The Court granted CreditGuard's motion to dismiss on February 7, 2022. See Doc. #77. The Court first held that plaintiff "fail[ed] to allege facts supporting its conclusion

that CreditGuard acted in concert with DiRaffaele to breach his fiduciary duty[,]" id. at 8, and did not adequately allege the "substantial assistance" or "knowledge" elements of an aiding and abetting breach of fiduciary duty claim. Id. at 14-15. As to its tortious interference claim, the Court held that plaintiff failed to adequately allege that "CreditGuard engaged in any independently tortious conduct beyond the fact of the interference itself." Id. at 17 (citation and quotation marks omitted). Finally, as to plaintiff's CUTPA claim, the Court held that plaintiff did not adequately assert that "CreditGuard, itself, engaged in any unfair trade practice." Id. at 19.

On February 8, 2022, plaintiff filed a Motion for Reconsideration of the Court's ruling granting CreditGuard's Motion to Dismiss. See Doc. #79. Plaintiff's Motion requested that the Court "amend it conclusion to grant Vanguard leave to file an amended complaint within a time certain." Id. at 1.

On February 11, 2022, the Court denied plaintiff's Motion for Reconsideration, holding that "Plaintiff does not seek reconsideration of the Court's Ruling; rather, plaintiff seeks leave to file an Amended Complaint." Doc. #84. As a result, the Court granted plaintiff leave to "file a motion for leave to file an Amended Complaint, in compliance with the Local and Federal Rules, on or before **February 25, 2022**." Id.

Plaintiff filed the instant Motion for Leave to Amend its Complaint on February 24, 2022. See Doc. #87. For the reasons stated herein, plaintiff's Motion for Leave to Amend its Complaint is **GRANTED**.

## II. Legal Standard

"Although Fed. R. Civ. P. 15(a) provides that leave to amend a complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), it is within the sound discretion of the district court whether to grant or deny leave to amend." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). Where, as here, the Court has entered a Scheduling Order, see Doc. #30, and the deadline to amend pleadings has passed, the lenient standard of Rule 15(a) "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (citation and quotation marks omitted); see also Fed. R. Civ. P. 15(a), Fed. R. Civ. P. 16(b).

"Under Rule 16(b), a court may exercise its discretion to deny a motion to amend due to the moving party's undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendment, undue prejudice to the opposing party or futility of the amendment." Dall v. Certified Sales, Inc., No. 3:08CV00019(DFM), 2011 WL 572389, at

*1 (D. Conn. Feb. 15, 2011). "While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'" Hartmann v. QBE Specialty Ins. Co., No. 3:20CV01008(VAB), 2021 WL 231133, at *3 (D. Conn. Jan. 22, 2021) (quoting United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018)).

### III. Discussion

Defendant argues that "Plaintiff's motion should be denied because: (1) it is untimely and Plaintiff has not shown good cause; (2) CreditGuard will be prejudiced by the late amendment; and (3) allowing the proposed amendments would be futile." Doc. #90 at 7. Each argument fails.

**A. Diligence**

"The 'good cause' standard chiefly 'depends on the diligence of the moving party.'" Wade v. Kay Jewelers, Inc., No. 3:17CV00990(MPS), 2018 WL 3553340, at *1 (D. Conn. July 24, 2018) (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)). "The movant bears the burden of showing diligence." Id. "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline." Verdone v. Am. Greenfuels, LLC, No. 3:16CV01271(VAB), 2017 WL 3668596, at *2 (D. Conn. Aug. 24,

2017) (citation and quotation marks omitted). However, "[w]here the deadline for asserting additional claims or defenses set forth in the scheduling order has passed, courts commonly find that a party acts diligently if it seeks leave to amend" shortly after learning new information relevant to its claim or defense. Martell Strategic Funding LLC v. Am. Hosp. Acad., No. 12CV00627(VSB), 2017 WL 2937649, at *2 (S.D.N.Y. July 10, 2017); Precision Trenchless, LLC v. Saertex multiCom LP, No. 3:19CV00054(JCH), 2022 WL 807052, at *2 (D. Conn. Mar. 16, 2022) ("Courts in this Circuit have found that plaintiffs acted diligently and, thus, that good cause existed to amend, when plaintiffs sought leave to amend within [approximately two months] of having learned of the bases for amendment.").

Plaintiff has established that it was diligent in pursuing leave to amend its complaint. CreditGuard does not dispute that plaintiff became aware of the "specific facts added to Vanguard's claims against CreditGuard[,]" at earliest, on December 21, 2021. Doc. #87-3 at 5. Plaintiff filed the instant motion on February 24, 2022, just over two months after it became aware of the bases for its proposed amendment. See Doc. #87. Consequently, plaintiff's "Motion to Amend does not reflect a lack of diligence on the part of [plaintiff], as [plaintiff] moved to amend within a reasonable timeframe after learning" the

facts that form the basis for its amendment. Precision Trenchless, LLC, 2022 WL 807052, at *2.

Nevertheless, CreditGuard asserts that plaintiff's motion should be denied because it did not promptly commence discovery. See Doc. #90 at 11. Specifically, CreditGuard contends that plaintiff did not act with diligence because "Bottom Line served discovery on July 26, 2021, [while] Plaintiff waited another three months (October 13, 2021) before serving any discovery." Id. However, CreditGuard's assertion that plaintiff was dilatory in commencing discovery is belied by its own failure to serve "discovery requests until the day before Thanksgiving." Doc. #94 at 3 n.2. Accordingly, the Court finds that plaintiff acted with reasonable diligence when pursuing leave to amend its complaint.

**B.   Undue Prejudice**

CreditGuard asserts that plaintiff's motion should be denied because "CreditGuard will be prejudiced by the late amendment[.]" Doc. #90 at 7.

"Denying leave to amend a complaint requires not just prejudice but undue prejudice." Francisco v. Abengoa, S.A., No. 15CV06279(ER), 2021 WL 4136899, at *19 (S.D.N.Y. Sept. 10, 2021).

> In gauging prejudice, [the Court] consider[s], among other factors, whether an amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute."

~ 7 ~

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). Undue prejudice arises when an "amendment [comes] on the eve of trial and would result in new problems of proof." Fluor Corp., 654 F.2d at 856 (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery"). Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008).

CreditGuard first contends that it will be prejudiced by amendment because "[f]orcing CreditGuard back into this case to restart discovery and pleading as a party will put on CreditGuard an unfair and enormous burden in resources and finances." Doc. #90 at 15. Specifically, CreditGuard asserts that

> [i]f Plaintiff is permitted to amend its allegations at this late stage in the proceeding, CreditGuard will need to begin the discovery process anew, retake already completed depositions, move to compel responses from Plaintiff, and draft and serve additional written discovery. Given the insufficient allegations in the amended complaint, CreditGuard may file another motion to dismiss.

Id. at 13.[1]

Despite CreditGuard's argument to the contrary, however, "the prospect of spending more time, effort, or money on litigation -- including through additional discovery and motion practice does not render an amended complaint unduly

---

[1] It is not clear why CreditGuard would need to "begin the discovery process anew[,]" id., if it is added back to this action as a defendant.

prejudicial." Francisco, 2021 WL 4136899, at *19; see also Block, 988 F.2d at 351 (granting leave where nonmovant argued prejudice based solely on "the time, effort and money they expended in litigating this matter[]"). Consequently, CreditGuard's assertion that it will be forced to conduct additional discovery and motion practice is insufficient to establish the undue prejudice necessary to deny plaintiff's Motion for Leave to Amend its Complaint.

CreditGuard next asserts that it will be prejudiced by amendment because it will "need to seek leave to modify the deadlines" if plaintiff's motion is granted. Doc. #90 at 13. CreditGuard fails to establish that it will be unduly prejudiced by delay in the resolution of this matter. "This is not a case where the amendment came on the eve of trial and would result in new problems of proof. ... [N]o trial date ha[s] been set by the court and no motion for summary judgment ha[s] ... been filed by the defendants." State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citation and quotation marks omitted).

Because discovery remains open, no trial date has been set, and no motions for summary judgment have been filed, CreditGuard is unable to establish that the "additional discovery that will result from the amendment would significantly delay the resolution of the dispute." Lin v. Toyo Food, Inc., No. 12CV07392(KMK), 2016 WL 4502040, at *3 (S.D.N.Y. Aug. 26, 2016)

(emphasis in original) (citation and quotation marks omitted). Thus, any "modest extension of the schedule that may be necessary to allow discovery pertaining to new allegations is insufficient justification to deny a motion to amend as prejudicial to" CreditGuard. Gov't Emps. Ins. Co. v. Axial Chiropractic P.C., No. 19CV05570(ENV)(VMS), 2021 WL 2791599, at *1 (E.D.N.Y. July 5, 2021). Accordingly, CreditGuard has failed to establish that it would be unduly prejudiced by plaintiff's proposed amendment.

    **C.**    **Futility**

Finally, CreditGuard asserts that plaintiff's motion "should be denied for the independent reason that the proposed amended complaint still fails to state any legally sufficient claim against CreditGuard, and allowing amendment would, therefore, be futile." Doc. #90 at 15.

With respect to futility, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). "The party opposing a motion to amend bears the burden of establishing that amendment would be futile." Tahirou v. New Horizon Enterprises, LLC, No. 3:20CV00281(SVN), 2022 WL 596741, at *3 (D. Conn. Feb. 28, 2022) (citation and quotation marks omitted). "An amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

However, if "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits." Tahirou v. New Horizon Enterprises, LLC, 2022 WL 596741, at *3 (quoting United States v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989)). Therefore, the Court "should dismiss claims for futility only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." Richard Mfg. Co. v. Richard, 513 F. Supp. 3d 261, 290 (D. Conn. 2021) (citation and quotation marks omitted).

CreditGuard has not established "beyond doubt that the plaintiff can prove no set of facts in support" of its amended claims. Plaintiff has brought three claims against CreditGuard, alleging that CreditGuard: (1) tortiously interfered with its business relationships; (2) violated CUTPA; and (3) acted in concert with and/or aided and abetted DiRaffaele's breach of fiduciary duty. See Doc. #87-2 at 13-17. Defendant contends that "[t]he proposed amended complaint still fails to allege facts, as opposed to conclusions, sufficient to state a plausible claim against CreditGuard[.]" Doc. #90 at 15.

Plaintiff's proposed Amended Complaint sets forth an array of new factual allegations, including that: (1) while DiRaffaele was Vanguard's agent, he had several meetings with a CreditGuard employee, "during which he provided a list of Vanguard dealership customers he would bring over to CreditGuard and disclosed information about accounts that he claimed ... [a] Vanguard employee, had 'lost[,]'" Doc. #87-1 at 9; (2) DiRaffaele and a CreditGuard employee met with a Vanguard client while DiRaffaele remained Vanguard's agent to "jointly sell him on the idea of leaving Vanguard[,]" id.; and (3) CreditGuard and DiRaffaele entered into an independent contractor agreement using "assumptions and sales projections based on information about the dealerships that DiRaffaele possessed only because of his relationship with Vanguard." Id. at 10.

Taken together, the facts alleged by plaintiff may show that CreditGuard knew DiRaffaele was in an agency relationship with Vanguard, and that CreditGuard and DiRaffaele used plaintiff's confidential business information to divert Vanguard's clients to CreditGuard. Such allegations -- at this stage -- are sufficient to show that "the underlying facts or circumstances relied upon by ... plaintiff may be a proper subject of relief[.]" Tahirou, 2022 WL 596741, at *3.

Accordingly, defendant has failed to establish that plaintiff's proposed Amended Complaint would be futile at this stage.[2]

In sum, the Court finds that good cause exists to permit plaintiff to amend its complaint in light of the diligence it has shown in pursuing amendment. Defendant has failed to establish that it would be unduly prejudiced by amendment, or that such amendment would be futile. Accordingly, plaintiff's Motion for Leave to Amend is **GRANTED.**

Plaintiff shall file its Amended Complaint on the docket on or before **May 4, 2022.** CreditGuard shall file a motion to dismiss or other responsive pleading on or before **May 27, 2022.**

### IV. Conclusion

Thus, for the reasons stated, plaintiff's Motion for Leave to Amend its Complaint [**Doc. #87**] is **GRANTED.**

---

[2] Defendant further asserts that plaintiff's proposed amendments are brought in bad faith because "[t]he lawsuit against CreditGuard serves no legitimate legal purpose" and "[i]t is apparent from the original Complaint that the claims against CreditGuard were speculative and simply part of a larger design to force Bottom Line and CreditGuard to spend money to drive them out of business." Doc. #90 at 14. However, this argument is wholly dependent upon a finding that plaintiff lacks a legal basis for its claims. Thus, "[a]s the Court has concluded that the proposed amendments are not futile, plaintiffs' good faith in moving to amend is apparent." J. Pub. Co. v. Am. Home Assur. Co., 771 F. Supp. 632, 637 (S.D.N.Y. 1991).

Plaintiff shall file its Amended Complaint on the docket on or before **May 4, 2022.** CreditGuard shall file a motion to dismiss or other responsive pleading on or before **May 27, 2022.**

It is so ordered at New Haven, Connecticut, this 27th day of April, 2022.

                                       /s/
                                       HON. SARAH A. L. MERRIAM
                                       UNITED STATES DISTRICT JUDGE