UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VANGUARD DEALER SERVICES, : 
LLC, :
:
*Plaintiff*, :
: No. 3:21-cv-659 (JAM)
v. :
:
BOTTOM LINE DRIVEN, LLC, :
:
*Defendant*.

## RULING ON PLAINTIFF'S MOTION TO SUBSTITUTE EXPERT AND TO MODIFY SCHEDULING ORDER

Pending before the Court is plaintiff's Motion to Substitute Expert and to Modify Scheduling Order.  Doc. No. 200.  Also pending is defendants' request for shifting of fees and costs if plaintiff is permitted to substitute its damages expert.  Doc. No. 204, at 17.  For the reasons that follow, plaintiff's motion is GRANTED, and defendants' request is DENIED WITHOUT PREJUDICE.

### A.  BACKGROUND

Plaintiff moves, after the expiration of the discovery deadline, for additional time to disclose a damages expert on the ground that its original expert is unexpectedly unavailable to testify.  The original expert (Emily Pollack) is a member of the board of directors of plaintiff's parent company (Spectrum Automotive Holdings Corp.) and a partner in a private investment firm (Cornell Capital) that is a part-owner of Spectrum.  *See* Pl. Expert Discl., Doc. No. 104-6. The Court credits the following factual representations of plaintiff's counsel.  *See* Doc. No. 200.

Ms. Pollack was disclosed as a non-retained damages expert under Rule 26(a)(2)(C) with a summary of facts and opinions but no formal report.  *Id.* ¶¶ 1-2.  Plaintiff also disclosed Ms. Pollack's work product, including damages calculations.  *Id.* ¶ 2.  Defendants pursued additional

damages-related document discovery from plaintiff, Spectrum, and Cornell, *id.* ¶¶ 2-3, including

via motions that were granted in part, *see* Order, Doc. No. 178.  Meanwhile, Ms. Pollack's

scheduled deposition was postponed.  Pl. Mtn., Doc. No. 200, at ¶ 3.  Upon resolution of those

document disputes, defendants sought to reschedule her deposition.  *Id.* ¶ 4.  On August 17,

2022, Ms. Pollack advised plaintiff's counsel that she was "withdrawing" as plaintiff's damages

expert.  *Id.*  On August 19, plaintiff's counsel began searching for a replacement while

simultaneously investigating Ms. Pollack's situation and the potential for her to continue as

plaintiff's expert.  *Id.* ¶¶ 4-7.  Ms. Pollack has flatly refused to testify on the ground that she is

"extremely busy."  *Id.* ¶ 7.  On September 2, plaintiff's counsel advised defendants' counsel of

these developments and of plaintiff's progress in seeking a replacement.  *Id.* ¶¶ 8-9.

On September 9, plaintiff filed the pending motion seeking, *inter alia*, extensions of the

deadline for plaintiff's expert disclosure and related discovery and a two-month extension of the

joint trial memorandum deadline.  *Id.*  In the motion, plaintiff identifies the proposed substitute

expert (Trevor McClain-Duer) and stipulates that he "is expected to provide testimony consistent

with Ms. Pollack's analysis and methodology" and "will issue a report that is consistent with the

methodology used by and opinions expressed by Ms. Pollack [such that] defendants will not be

unfairly surprised by a brand-new theory and defense counsel's preparation to depose Ms.

Pollack will not be rendered moot."  *Id.* ¶¶ 8, 19.

### B.  LEGAL STANDARD

Courts in the Second Circuit apply the "good cause" standard of Rule 16(b)(4) to requests

to substitute an expert after the disclosure deadline and tend to analyze three factors: (1) whether

"unforeseen events render the original expert witness unavailable to testify at trial," *Nature's*

*Plus A/S v. Nat. Organics, Inc.*, No. 09-cv-04256 (ADS)(AKT), 2014 WL 12964552, at *3

(E.D.N.Y. Oct. 29, 2014); (2) whether the movant acted diligently, i.e., "despite its having exercised diligence, the applicable deadline could not have been reasonably met," *id.*, at *3; and (3) whether the delay has unduly prejudiced the opposing party, such as by unfairly affecting its ability to prepare for trial and increasing its cost burdens, *id.*, at *6-8.  Courts have mitigated the possibility of undue prejudice by exercising their discretion to (a) require that the new expert adhere to the subjects and theories as the original expert, and/or (b) shift increased fees and costs to the moving party.  *Id.*; *see also*, *e.g.*, *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 3:06-cv-1710 (VLB), 2009 WL 5184404 (D. Conn. Dec. 23, 2009) (granting substitution and mitigating prejudice by limiting new expert's testimony to "establishing the veracity and integrity of [the original expert] and the conclusions reached in [his] original expert report" but declining to shift fees and costs given no evidence that substitution was motivated by "tactical maneuvering" or bad faith).

### C.  ANALYSIS

Defendants argue that Ms. Pollack is not unavailable because she is able to testify but simply does not wish to.  Def. Br., Doc. No. 204, at 2, 6-8.  They further contend that Ms. Pollack's busy schedule was not unforeseen to her, and that plaintiff made a "tactical choice" to proceed with an unretained expert from an affiliated company and so "must accept responsibility for Ms. Pollack's refusal to testify."  *Id.* at 2, 9-10.  They add that plaintiff should not be permitted to improve its case by late substitution of a professional expert with better credentials. *Id.*, at 12-13.  For its part, plaintiff contends that it does not control Ms. Pollack, that her refusal was unexpected, and that an expert's refusal to testify may constitute unavailability, citing *Pierce v. Fremar, LLC*, No. 09-cv-4066 (KES), 2010 WL 5172883, at *2 (D.S.D. Dec. 14, 2010).  *See* Pl. Mtn., Doc. No. 200, at 8; Reply Br., Doc. No. 205, at 4-8.

Although *Pierce* is partially distinguishable insofar as courts in the Eighth Circuit apply a slightly different test for Rule 16(b) good cause – namely, an "excusable neglect" test that asks, *inter alia*, whether the delay was within the moving party's reasonable control – it is still persuasive as the closest fact pattern to the present circumstances.  *See Pierce*, 2010 WL 5172883 (concluding that expert's abrupt refusal to testify because he "no longer wished to be an expert witness" was not within the moving party's reasonable control and constituted good cause for substitution); *see also*, *e.g.*, *Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, No. 03-cv-1064 (DWF), 2006 WL 3836137, at *3 (D. Minn. Dec. 22, 2006) (granting motion to substitute where original expert declined to continue for personal reasons but imposing limitations on new expert's testimony to mitigate prejudice).  Furthermore, the cases cited by defendants relating to an expert's refusal to testify have materially different facts.  In *Pope v. Cnty. of Albany*, No. 1:11-cv-0736 (LEK)(CFH), 2014 WL 12526270 (N.D.N.Y. Aug. 6, 2014), although the court noted its suspicion that the expert was withdrawing for personal convenience while pretextually citing health complications, the court's denial of the motion to substitute ultimately turned on the nature of the case – which was a "battle of the experts" in which the "parameters of the dispute [would be] largely defined by expert testimony" – and on its finding that the moving party was strategically attempting to upgrade the expert analysis and opinions rather than merely substituting the expert.  Similarly, in *In re Genetically Modified Rice Litig.*, No. 4:06-md-1811 (CDP), 2010 WL 1292171 (E.D. Mo. Apr. 5, 2010), although the court found that the expert's allegations of medical incapacity were not credible, the denial of the motion to substitute ultimately turned on the material changes in the new expert's proposed methods, the resulting substantive and economic burdens on the opposing party, and the nearness of trial (two months away), which the court concluded would "unfairly" result in undue prejudice.

In the present case, although it was bad form for Ms. Pollack to break her commitment for personal convenience, there is no evidence before the Court that plaintiff was aware of this possibility and opted to choose Ms. Pollack regardless.  Such knowledge cannot be inferred merely from plaintiff's decision to select an unpaid witness from an affiliated company as its damages expert.  The Court credits the representations of plaintiff's counsel that this development was unexpected to plaintiff and beyond its control.  Ms. Pollack's affiliation with plaintiff – as a board member of plaintiff's parent company, Spectrum, and a partner in the entity that partly owns Spectrum – is too attenuated, and plaintiff's status in that power dynamic is too junior, to impute her knowledge or motives to plaintiff.  For the same reasons, there is no basis to believe that plaintiff exercises sufficient control over Ms. Pollack such that it can compel her to continue as its expert.  Consequently, the Court finds that unforeseen events render the original expert witness unavailable to testify at trial.  The Court also finds that plaintiff acted diligently in its original compliance with the expert disclosure deadline, in its efforts to investigate Ms. Pollack's withdrawal and the potential for her to continue as plaintiff's expert, in keeping defendants informed of these developments, and in locating a substitute expert within twenty-three days.  *See*, *e.g.*, *Pac. Controls Inc. v. Cummins Inc.*, No. 1:19-cv-03428 (MKV)(BCM), 2021 WL 5417122 (S.D.N.Y. Nov. 19, 2021) (moving party diligently identified substitute expert within two weeks); *Doctor's Assocs.*, at *4 (moving party diligently identified substitute expert within two months).

Additionally, the Court finds that substitution will not result in undue prejudice to defendants under the circumstances.  The case has been pending less than a year and a half; plaintiff's damages expert has not yet been deposed; and the schedule can be reasonably adjusted to ensure that defendants are not "unfairly surprised by information 'sprung' on [them] shortly

before trial." *See Nature's Plus*, at \*8; *see also*, *e.g.*, *Doctor's Associates*, at \*5 (granting

substitution, with mitigating limitations, even where unavailable original expert had already been

deposed and opposing party had prepared a rebuttal report).  As defendants concede, trial is not

imminent and will be further postponed in the likely event that one or more parties moves for

summary judgment.  *See* Def. Br., Doc. No. 204, at \*8.  Furthermore, plaintiff has stipulated that

the new expert "is expected to provide testimony consistent with Ms. Pollack's analysis and

methodology" and "will issue a report that is consistent with the methodology used by and

opinions expressed by Ms. Pollack [such that] defendants will not be unfairly surprised by a

brand-new theory and defense counsel's preparation to depose Ms. Pollack will not be rendered

moot."  Pl. Mtn., Doc. No. 200, at ¶¶ 8, 19.  Defendants do not claim to have retained a damages

expert or prepared a rebuttal analysis in reliance upon Ms. Pollack's opinions that would be

rendered materially moot by the proposed substitution.  Whatever preparations defendants have

made to oppose plaintiff's damages analysis , substitution within the stipulated limitations should

not materially alter them.  In other words, the stipulated limitations should substantially mitigate

the time, cost and strategic burdens on defendants resulting from the substitution.  In contrast,

depriving plaintiff of the ability to present expert damages testimony would significantly impact

its ability to obtain adjudication on the merits.  In light of the relatively shorter age of this case,

its current procedural posture, the unforeseen unavailability of the original expert, and plaintiff's

diligence, the present circumstances do not warrant such a consequence.

  The Court does not believe that this context-specific determination will "make

substitution of experts the norm, rather than the exception, and encourage gamesmanship," as

defendant contends.  *See* Def. Br., Doc. No. 204, at 7.  First, the good cause standard provides an

adequate guardrail against bad faith, clear fault, or tactical maneuvering by a party seeking

substitution, as demonstrated in the above-mentioned cases cited in defendant's brief.  Here, there is no evidence of any such improper motive on plaintiff's part.  Second, in addition to increasing plaintiff's own costs, substitution will create substantive disadvantages for plaintiff – for example, stepping into the shoes of the original expert will expose the new expert to cross-examination on issues such as bias and independence and render the new expert vulnerable to credibility-based attacks.  The inherent tactical disadvantages resulting from substitution, along with the good cause requirement and the tendency for courts to limit the substitute expert to the subjects and theories covered by the original expert, should effectively discourage requests to substitute from becoming commonplace.

### D.  CONCLUSION

For all the foregoing reasons, Plaintiff's Motion to Substitute Expert and to Modify Scheduling Order (Doc. No. 200) is GRANTED.  The Court concludes that there is good cause for substitution of plaintiff's damages expert consistent with the requirements of this ruling and order, which the Court is imposing in order to mitigate the possibility of prejudice.  The case deadlines are modified as follows.

Plaintiff may disclose its substitute expert (Trevor McClain-Duer) pursuant to Rule 26(a)(2) on or before **October 20, 2022**.  Plaintiff shall abide by its stipulation that the substitute expert will "provide testimony consistent with Ms. Pollack's analysis and methodology."  *See* Pl. Mtn., Doc. No. 200.  Although the substitute expert "is not . . . required to simply adopt the prior expert's conclusions verbatim," and may "express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform," he shall "adhere to the subjects and theories covered by the previous expert"

without "meaningful changes." *Nature's Plus*, 2014 WL 12964552, at *6. Any deposition of Mr. McClain-Duer shall be completed on or before **December 1, 2022**.

Additionally, the Court will enlarge the fact discovery deadline solely with respect to the fact witness subpoena that defendant served on Ms. Pollack after learning of her refusal to provide expert testimony. *See* Def. Br., Doc. No. 204, at 10 n.2. Any objections to that subpoena must be served on or before **October 27, 2022**, and any Local Rule 37(a) meet-and-confer, if needed, must be held on or before **November 3, 2022**. If any subpoena objection remains unresolved thereafter, the parties shall promptly seek a discovery conference pursuant to the procedure described in the Court's July 7, 2022 scheduling order. *See* Doc. No. 77. Any fact witness deposition of Ms. Pollack pursuant to the subpoena shall be completed on or before **December 1, 2022**.

Any dispositive motions and/or motions to preclude experts must be filed on or before **January 6, 2023**. The joint trial memorandum shall be filed by **March 6, 2023** or 30 days after the Court's ruling on dispositive motions, whichever is later.

Defendants' request for shifting of fees and costs is DENIED WITHOUT PREJUDICE. Because it is presently unclear whether the substitution will result in significant additional fees and costs, especially in light of the mitigating limitations imposed by this order, it would be premature to analyze whether the circumstances warrant such relief.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the

Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 13th day of October, 2022, at Bridgeport, Connecticut.

/s/ S. Dave Vatti
S. DAVE VATTI
United States Magistrate Judge