UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VANGUARD DEALER SERVICES, LLC, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:21-cv-659 (JAM) |
| | : | |
| BOTTOM LINE DRIVEN, LLC and JOSEPH DIRAFFAELE | : | |
| | : | |
| *Defendants*. | : | |

## RULING ON DEFENDANTS' MOTION FOR COSTS AND FEES

Defendants have filed a Motion for Costs and Fees resulting from plaintiff's substitution of its damages expert.  Doc. No. 225.  The motion is before the undersigned pursuant to a general referral of discovery motions in the case.  Doc. No. 236.  For the reasons that follow, the motion is GRANTED in part.

### A.  BACKGROUND

This matter was previously before the Court on plaintiff's motion for leave to substitute its damages expert after the disclosure deadline had already expired.  In a written ruling dated October 13, 2022, the Court found good cause for the substitution under Rule 16(b)(4) based on its findings that (1) the unavailability of the original expert was unforeseen to plaintiff; (2) plaintiff acted diligently; and (3) the late substitution would not result in undue prejudice to defendants.  *See Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*, No. 3:21-cv-659 (JAM), 2022 WL 7509163 (D. Conn. Oct. 13, 2022) (citing three-factor analysis in *Nature's Plus A/S v. Nat. Organics, Inc.*, No. 09-cv-04256 (ADS)(AKT), 2014 WL 12964552, at *3 (E.D.N.Y. Oct. 29, 2014)).  The Court assumes familiarity with the procedural history described in that ruling.

In granting the motion to substitute, the Court relied on two representations by plaintiff that warrant mention here.  *First*, although the Court concluded that it was bad form for the original expert (Emily Pollack) to break her commitment to testify for personal convenience, the Court credited the representations of plaintiff's counsel that this development was unexpected to plaintiff and beyond its control, rather than the result of "tactical maneuvering."  *See Vanguard Dealer Servs.*, 2022 WL 7509163, at *2 (citing *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 3:06-cv-1710 (VLB), 2009 WL 5184404 (D. Conn. Dec. 23, 2009) (granting substitution with mitigating restrictions and declining to shift fees and costs given no evidence that substitution was motivated by "tactical maneuvering" or bad faith)).  *Second*, the Court relied on plaintiff's proposal that the new expert would "provide testimony consistent with Ms. Pollack's analysis and methodology" and "will issue a report that is consistent with the methodology used by and opinions expressed by Ms. Pollack [such that] defendants will not be unfairly surprised by a brand-new theory and defense counsel's preparation to depose Ms. Pollack will not be rendered moot."  *Id.* at *3 (citing Pl. Br. on Mtn. Substitute, Doc. No. 200).  Noting that defendants had not yet deposed Ms. Pollack, retained a rebuttal expert, or prepared a rebuttal analysis, the Court concluded that plaintiff's proposed limitations would mitigate the possibility of undue prejudice to defendants, and ordered as follows:

> Plaintiff shall abide by its stipulation that the substitute expert will "provide testimony consistent with Ms. Pollack's analysis and methodology."  *See* Pl. Mtn., Doc. No. 200.  Although the substitute expert "is not . . . required to simply adopt the prior expert's conclusions verbatim," and may "express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform," he shall "adhere to the subjects and theories covered by the previous expert" without "meaningful changes."  *Nature's Plus*, 2014 WL 12964552, at *6.

*Id.*  The Court also denied defendants' request for costs and fees without prejudice, stating:

Because it is presently unclear whether the substitution will result in significant additional fees and costs, especially in light of the mitigating limitations imposed by this order, it would be premature to analyze whether the circumstances warrant such relief.

*Id.* at *4.

**B. DISCUSSION**

Defendants now contend that plaintiff's substitute expert, Trevor McClain-Duer, failed to abide by the limitations of the Court's Order by proposing a new, alternative measure of damages based on a lost profits theory. Defendants assert that plaintiff's disclosure of this alternative damages theory further increased their fees and costs beyond what had been contemplated at the time the Court permitted plaintiff to disclose a substitute expert. Def. Br. Mtn. Costs, Doc. No. 225 at 1. On this basis, defendants have filed both the instant motion for costs and fees and a separate motion to preclude Mr. McClain-Duer from offering the lost profits opinion at trial. *See* Def. Mtn. Preclude, Doc. No. 223. The preclusion issues are not before the undersigned on the instant motion, and this ruling expressly does not reach them. The sole questions that the Court presently must resolve are (1) whether the new expert's report complied with the Court's Order permitting substitution, (2) whether this noncompliance justifies shifting defendants' additional costs and fees to plaintiff, and (3) in what amount.

**1. Plaintiff failed to abide by court-ordered limitations**

It is undisputed that plaintiff's substitute expert did not comply with express limitations in the Court's substitution Order. In Mr. McClain-Duer's October 20, 2022 expert report, he not only opined that plaintiff's damages were $2,124,540 under the original "lost value" theory that Ms. Pollack had relied upon but also opined that a "lost profits" theory also "could be a good indication of damages" and that his "preliminary analysis of lost profits supports a significant amount of damages resulting from the defendants' alleged actions." *See* Pl. Opp. to Mtn. Costs,

Doc. No. 249 at 3.  Then, two weeks before his deposition, plaintiff served a supplemental

opinion from Mr. McClain-Duer asserting a damages calculation of $1,751,224 under the new,

alternative lost profits theory.  *See id.* at 4.  In so doing, plaintiff's substitute expert did not

"adhere to the subjects and theories covered by the previous expert without meaningful changes"

as ordered by the Court.  *See Vanguard Dealer Servs.*, 2022 WL 7509163, at *3.

### 2.   Cost shifting is warranted

The Court's finding that plaintiff failed to comply with the limitations of the substitution

Order informs the question of whether cost shifting is warranted.  Notably, in opposition to the

motion to substitute, defendants articulated their concern that the original expert's refusal to

testify was not an unforeseen event beyond plaintiff's control but, rather, a strategic attempt "to

replace her problematic testimony with that of a far more qualified and experienced expert."

Def. Opp. to Mtn. Substitute, Doc. No. 204 at 8.  Plaintiff's proposed limitations were expressly

designed to mitigate that concern, *see* Pl. Mtn. Substitute, Doc. No. 200, as was the Court's

Order formally imposing those limitations.  *See Vanguard Dealer Servs.*, 2022 WL 7509163, at

*3 ("[T]he stipulated limitations should substantially mitigate the time, cost and strategic

burdens on defendants resulting from the substitution.").  In fact, the stipulated limitations were

crucial to the Court's finding that the substitution was not "tactical maneuvering" and would not

result in undue prejudice to defendants.

Plaintiff's opposition to the instant motion gives the Court a sense of déjà vu.  Plaintiff

admits that it has not complied with another procedural limitation but contends, just like before,

that this was beyond its control and not the result of tactical maneuvering.  Specifically, plaintiff

asserts that Mr. McClain-Duer's mention of a "preliminary analysis of lost profits" in his first

report "was likely to invite questions and criticisms from defendants," so plaintiff was forced to

ask him to complete the lost profits analysis.  *See* Pl. Opp. to Mtn. Costs, Doc. No. 249 at 4. However, plaintiff does not explain what efforts it took, if any, to prevent the noncompliant "preliminary analysis" to be included in the first report other than stating at oral argument that Mr. McClain-Duer "felt strongly" about it.  And although plaintiff accurately describes the one-week expert disclosure deadline in the Court's order as "very tight," *see id.*, the Court set that deadline in reliance on plaintiff's representation that a substitute expert had already been retained and that plaintiff intended for that expert to adopt the theory and methodology utilized by Ms. Pollack.  Moreover, plaintiff did not ask for an extension of that deadline.

The Court does not believe that plaintiff deliberately encouraged Mr. McLain-Duer to disregard the Court's limitations at the outset.  But, even assuming that Mr. McClain-Duer mentioned his "preliminary analysis of lost profits" in the first report of his own initiative and could not be persuaded to delete it, plaintiff then made a deliberate decision to ask him to expand the lost profits analysis in a supplemental opinion, rather than take a more cautious approach in light of the Court's order.  Even assuming that plaintiff's motivation was merely defensive – i.e., to reduce Mr. McClain-Duer's vulnerability to cross-examination – that still constitutes a deliberate decision to disregard the Court's order for strategic reasons.  Moreover, it appears that plaintiff intends to make affirmative use of the new lost profits opinion as this matter progresses including at any trial, either to bolster the lost value opinion or as a standalone alternative theory of damages. [1]

---

[1] Plaintiff's brief in opposition to defendants' Motion to Preclude the testimony of Mr. McClain-Duer, which is separately pending, states: "Plaintiff acknowledges that the supplemental report sets forth an opinion on damages using a method that is more expansive than Pollack's opinion, but notes that it is used, at least in part, to bolster the validity of the lost value methodology." Doc. No. 242 at 9.

In short, the Court concludes that plaintiff has made a conscious choice to pursue the lost profits theory in spite of its prior representations and the Court's Order because it perceives a strategic advantage in doing so with respect to its damages claims.  Although the Court leaves the issues of substantive impacts and consequences to be resolved in the motion to preclude, the Court concludes that plaintiff should bear the costs that defendants have incurred as a result of the substitution and the new theory advanced.  *See*, *e.g.*, *Nature's Plus A/S v. Nat. Organics, Inc.*, No. 09-cv-04256 (ADS)(AKT), 2014 WL 12964552, at *3 (E.D.N.Y. Oct. 29, 2014) (ordering substituting party to bear costs of court reporter and transcripts for substitute expert's deposition even where original expert withdrew due to serious illness); *Jung v. Neschis*, No. 01-cv-6993 (RMB)(THK), 2007 WL 5256966, at *16 (S.D.N.Y. Oct. 23, 2007) (substituting party should bear costs and fees associated with opponent's discovery efforts relating to original expert), *report and recommendation adopted* (Sept. 21, 2007); *Gucci Am., Inc. v. Exclusive Imports Int'l*, No. 99-cv-11490 (RCC)(FM), 2001 WL 21253, at *4 (S.D.N.Y. Jan. 9, 2001) (allowing plaintiff to substitute expert on the condition that it promptly pay defendants' fees and expenses reasonably attributable to designation of original expert).

### 3.  Amount of costs and fees

In determining the amount, the Court presumes that defendants' costs and fees resulting from the substitution would have been negligible if plaintiff had complied with the limitations in the Court's order.  Accordingly, the Court will focus on defendants' costs and attorney time relating to plaintiff's new lost profits theory.  The Court is mindful of the Supreme Court's guidance that although the fee applicant must submit appropriate documentation to meet "the burden of establishing entitlement to an award," a determination of fees "should not result in a

second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983)).

> [T]rial courts need not, and indeed should not, become green-eyeshade
> accountants.  The essential goal in shifting fees (to either party) is to do rough
> justice, not to achieve auditing perfection.  So trial courts may take into account
> their overall sense of a suit, and may use estimates in calculating and allocating an
> attorney's time.

*Id.*; *see also Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10-cv-1827 (JBA), 2018 WL 3918185,

at *6 (D. Conn. Aug. 16, 2018) (court is not required to determine fee award with "exactitude").

To determine reasonable attorneys' fees, courts multiply "a reasonable hourly rate by the

number of reasonably expended hours."  *See Bergerson v. New York State Office of Mental*

*Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011).  Because defendants'

counsel understandably did not allocate their expert discovery time and costs with specific

reference to the lost profits issue, the Court will estimate that allocation based on the percentage

of Mr. McClain-Duer's deposition that focused on that issue.  *See Kirsch v. Fleet St., Ltd.*, 148

F.3d 149, 173 (2d Cir. 1998) ("[T]he court has discretion simply to deduct a reasonable

percentage of the number of hours claimed as a practical means of trimming fat from a fee

application[.]") (citation and quotation marks omitted); *see also*, *e.g.*, *MSP Recovery Claims,*

*Series LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 3:20-cv-305 (JCH), 2021 WL 5563982, at *7

(D. Conn. Nov. 29, 2021) (reducing fee total by flat percentage to account for ambiguity in

attorneys' time records).  It appears that approximately 153 of the 340 pages – i.e., 45% – of the

examination are materially related to the lost profits theory.  *See* McClain-Duer Dep. Tr., Doc.

No. 222-5 at 305-392.  The Court therefore concludes that plaintiff should compensate

defendants for 45% of (a) the attorneys' fees incurred preparing for and taking the substitute

expert's deposition, [2] and (b) the cost of the court reporter's invoice. [3]   The Court is not persuaded by plaintiff's contention that it was unreasonable for defendants' counsel to spend 7 hours deposing Mr. McClain-Duer.  *See* Pl. Opp. to Mtn. Costs, Doc. No. 249 at 9.

The Court also concludes that plaintiff should reimburse defendants for the time defendants' counsel spent preparing the instant Motion for Costs and Fees.  The Court finds the number of hours reasonable under the circumstances.

Regarding the reasonableness of the hourly rates, plaintiff's sole objection is that Attorney Mueller's hourly rate ($550) is higher than that of Attorney Klimmek ($500) despite their relatively comparable education and experience.  However, this anecdotal comparison does not answer the relevant inquiry, which "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks omitted) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008)).  That inquiry is informed by "case-specific variables" that courts have identified, such as the *Johnson* factors and the client's ability to negotiate with its attorneys. [4]   *See Arbor Hill*, 522 F.3d at 190.  Courts may

---

[2] This does not include time spent coordinating with opposing counsel and the court reporter.

[3] In its brief, plaintiff asserts that defendants have refused to pay Mr. McClain-Duer's reasonable fee for time spent giving deposition testimony.  *See* Pl. Opp. to Mtn. Costs, Doc. No. 249 at 9 n.4.  The Court notes only that defendants' motion did not seek relief from that obligation, *see* Fed. R. Civ. P. 26(b)(4)(E)(i), so no such relief is granted.

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesireability" of the case; (11)

take judicial notice of "the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Kennedy v. Supreme Forest Prod., Inc.*, 295 F. Supp. 3d 113, 124-25 (D. Conn. 2017) (citation and quotation marks omitted). Based on the experience of defendants' counsel, the nature of the expert discovery work, and the Court's knowledge of the prevailing rates in this district, the Court finds that the above-listed hourly rates of defendants' counsel are reasonable.

Although Attorney Mueller avers that his rate increased in the new calendar year, the Court will apply the rate asserted in defendants' initial moving papers. The total amount is therefore calculated as follows:

| Item | Hours | Rate | Subtotal | % | Total |
|------|-------|------|----------|---|-------|
| Deposition prep and examination | 35.2 | $500 | $ 17,600 | 45% | $ 7,920 |
| Court reporter's invoice | | | $ 2,599.95 | 45% | $ 1,169.98 |
| Preparing fee motion and briefs | 15.6 | $550 | $ 8,580 | 100% | $ 8,580 |
| | | | | **TOTAL:** | **$ 17,669.98** |

### C.  CONCLUSION

For all the foregoing reasons, defendants' Motion for Costs and Fees in GRANTED in part, and plaintiff shall pay **$ 17,669.98** to defendants for costs and fees resulting from plaintiff's noncompliance with the Court's substitution Order.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §

---

the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the

Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 27th day of March, 2023, at Bridgeport, Connecticut.

/s/ S. Dave Vatti
S. DAVE VATTI
United States Magistrate Judge