UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VANGUARD DEALER SERVICES, LLC, | : <br> : <br> : |
| *Plaintiff*, | : <br> : |
| v. | :     No. 3:21-cv-659 (JAM) |
| | : |
| BOTTOM LINE DRIVEN, LLC and JOSEPH DIRAFFAELE | : <br> : <br> : |
| *Defendants*. | : <br> : |

**<u>RULING ON MOTION FOR LEAVE TO AMEND COUNTERCLAIM</u>**

Pending before the Court is defendants' Motion for Leave to Amend their counterclaim.[1] *See* ECF 280. The motion is granted in part and denied in part as follows.

**A. LEGAL STANDARD**

Typically, a motion to amend pleadings is governed by Rule 15, which states that "a court should freely give leave to amend when justice so requires." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021) (quoting Fed. R. Civ. P. 15). However, even under that liberal standard, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Furthermore, because the deadline to amend pleadings has expired in this case, defendant must also show good cause for the amendment pursuant to Rule 16. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). In assessing whether there is good cause for the amendment,

---

[1] This case was referred to the undersigned for all pretrial matters. ECF 140.

>the primary consideration is whether the moving party can demonstrate diligence. It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the non-moving party].

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) ("Where a scheduling order governs amendments to the complaint and a plaintiff wishes to amend after the scheduling deadline has passed, the plaintiff must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend.") (quotation cleaned up). To assess prejudice in the context of a motion to amend pleadings, courts consider whether the assertion of the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [movant] from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

## B. DISCUSSION

### 1. Diligence

Regarding the threshold question, the Court finds that defendants have acted diligently in seeking leave to amend. The proposed amendment concerns plaintiff's written agreement to settle its claims in this action against CreditGuard, a former co-defendant. *See* Proposed Amdt., ECF 281-2 at 7. Plaintiff and CreditGuard are competitors who offer finance and insurance ("F&I") products for sale at auto dealerships, and defendants Bottom Line Driven and Joseph DiRaffaele work to place such products at dealerships. Plaintiff's claims in this action allege that defendants were its agents and that defendants Bottom Line Driven and Joseph DiRaffaele conspired with former co-defendant CreditGuard to divert four dealership customers from

2

plaintiff to CreditGuard.  Am. Compl., ECF 136.  In their answer, defendants have denied that they had an exclusive relationship with plaintiff and have asserted a counterclaim under the Connecticut Unfair Trade Practices Act ("CUTPA") alleging that plaintiff is seeking drive defendants out of the market and to stifle competition, including by "initiat[ing] this objectively baseless action."  *See* Am. Answer, ECF 148 at 18-24.  The parties filed cross motions for summary judgment on January 6, 2023 that address, *inter alia*, the counterclaim.  *See* ECF 221 and 226.

Since the summary judgment motions were filed, certain facts have come to light regarding plaintiff's settlement with CreditGuard several months earlier.  In their written settlement agreement, plaintiff agreed to dismiss its claims against CreditGuard in exchange for a promise that, for a period of two years, CreditGuard would not work with defendants to place its products at more than 330 dealerships in Connecticut, Massachusetts, and New York.  *See* ECF 281-3 at 3.  Although the settlement agreement was fully executed in October 2022, defendants represent that they did not have reason to suspect that it included the above-described limitation until February 3, 2023, when CreditGuard advised defendants that it could not work with them to place products at a particular dealership.  *See* ECF 241 at 2.  Four days later, Defendants filed a motion for leave to serve discovery to obtain the settlement agreement, *see* ECF 241, which this Court granted over plaintiff's objection on March 16, 2023.  *See* ECF 277.  Defendants then moved for leave to amend their counterclaim just one week later.  *See* ECF 280.

Based on this history, the Court finds that defendants have acted diligently.  Not only does the "proposed amendment involve[] activities that have occurred during the pendency of this lawsuit and that plaintiff could not have included in her complaint when it was first filed," *see Smulley v. Mut. of Omaha Bank*, No. 3:14-cv-997 (JAM), 2016 WL 6208251, at *2 (D.

3

Conn. Oct. 24, 2016) (granting leave to amend), but defendants also acted quickly to investigate and propose the amendment as soon as they became aware that the settlement agreement had a limiting effect on their ability to do business with CreditGuard.

### 2. Prejudice

The more complicated question is whether plaintiff would be unduly prejudiced by the amendment at this juncture, given that discovery closed on September 30, 2022 and the parties filed cross-motions for summary judgment on January 6, 2023. The amendment purports to merely expand defendants' existing counterclaim for relief under CUTPA. However, upon closer examination, defendants are seeking to add what amounts to a new standalone claim or, at the very least, a significant expansion of their CUTPA theories of liability. The proposed amended invokes the "public policy" theory of CUTPA liability, [2] alleging that the settlement agreement violates federal and Connecticut antitrust statutes, including 15 U.S.C. § 1 and Connecticut General Statutes §§ 35-26 and 35-28. *See* ECF 282-1 at 7. Although the prior iteration of the counterclaim vaguely referenced public policy "as established by statute and common law," *id.* at 9, it did not allege any violation of antitrust law specifically. *See id.* Nor is antitrust law mentioned in any of the prior pleadings or the pending summary judgment motions. Thus, although styled as part of the original CUTPA claim, the proposed amendment would

---

[2] There are four alternative avenues to establish CUTPA liability. Under the so-called Cigarette Rule, the injured party can show that the practice either (1) offends established public policy, (2) is immoral, unethical, oppressive or unscrupulous, or (3) causes substantial injury to consumers, competitors or other businesspersons. *See Ulbrich v. Groth*, 310 Conn. 375, 409 (2013); *see also Kent Literary Club v. Wesleyan Univ.*, 338 Conn. 189, 232-33 (2021) (listing three elements of substantial injury test). Also, (4) a CUTPA claim potentially may be based on a deceptive act or practice. *See Caldor v. Heslin*, 215 Conn. 590, 597 (1990) (listing three elements of deception claim).

introduce complex legal standards and issues under antitrust law that have not previously been developed in this action.

The parties' briefs illustrate the sort of new complexity that the proposed amendment would generate. For example, the briefs make hurried arguments about whether the alleged refusal to deal would be subject to "per se" versus "rule of reason" analysis under antitrust law, which is a nuanced question that requires careful development and consideration. Introducing such issues at this late juncture would delay this already three-year-old case. *See Block*, 988 F.2d 344 at 350 (significant delay resulting from amendment may constitute prejudice to the non-moving party). Meanwhile, denying leave to pursue the claim in this action will not prevent defendants from timely pursuing it elsewhere, given that the alleged conduct occurred only recently. *See id.* (court may consider whether denial of leave to amend would prejudice moving party by preventing it from timely bringing the claim in another action). Although defendants note that it would be inefficient to initiate a new action to pursue this claim, *see* Def. Br., ECF 281 at 5, "there is an underlying assumption that an amended complaint will clarify or amplify the original cause of action, not add new causes of action," *see Wilson v. McKenna*, No. 3:12-cv-1581 VLB, 2015 WL 1471908, at *14 (D. Conn. Mar. 31, 2015), and it would certainly not be efficient to delay resolution of this case by adding a complex new legal theory after summary judgment motions have already been filed. Accordingly, leave to amend is denied with respect to the antitrust theory. *See*, *e.g.*, *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of leave to amend where discovery was complete, a motion for summary judgment was pending, and the "new claims concerned a different period of time and were derived from a different statute").

Nonetheless, the Court finds that these concerns are alleviated if the antitrust assertion is removed.  The remaining factual allegations regarding the content and effect of the settlement agreement seek to "clarify or amplify the original cause of action."  *See Wilson*, at *14.  It does not appear that these supplemental allegations will require additional discovery, given that plaintiff already knows the circumstances under which it entered the settlement and defendants have stipulated that they will not seek additional discovery in this regard.  *See* Def. Reply Br., ECF 294 at 8.  Nor does it appear that the proposed factual allegations would moot any aspect of the pending motions for summary judgment or cause other significant delay.  Accordingly, the Court finds that the proposed amendment to defendants' counterclaim will not be unduly prejudicial so long as it does not purport to claim that plaintiff's conduct offends state or federal antitrust policy and law. [3]

### C.  CONCLUSION

For all the foregoing reasons, defendants' Motion for Leave to Amend their counterclaim is granted in part.  By **May 3, 2023**, defendant may amend their counterclaim to include the proposed new allegations, except that the amended pleading shall <u>not</u> include the single sentence that reads "In addition to confirming that Vanguard's true goal in this litigation is [to] stifle competition from DiRaffaele and Bottom Line Driven, Vanguard's settlement agreement is a blatant violation of Connecticut and federal antitrust laws, including 15 U.S.C. § 1 and Connecticut General Statutes §§ 35-26 and 35-28."  Plaintiff's answer to the amended counterclaim shall be filed by **May 10, 2023**.

---

[3] Regarding plaintiff's additional contention that the amendment would be futile, the Court will not presently reach that issue given that the legal viability of the CUTPA claim is presently before Judge Meyer on plaintiff's motion for summary judgment.  *See* ECF 226.

As discussed above, the Court does not anticipate that the amendment will require any new discovery. Because discovery is closed, the parties may not serve discovery in connection the amended allegations without leave of the Court. Any request for leave to serve additional discovery will be closely scrutinized.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 1st day of May, 2023, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge